IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-HC-2308-FL

| ROGER EARL COLEY, | ) | |
|---|---|---|
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ERIK A. HOOKS, | ) | |
| | ) | |
| Respondent.[1] | ) | |

Petitioner, a state inmate, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court on respondent's motion for summary judgment (DE 22) pursuant to Federal Rule of Civil Procedure 56. The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants respondent's motion for summary judgment.

### STATEMENT OF CASE

On August 2, 2006, petitioner was convicted, following a jury trial in the Edgecombe County Superior Court, of first-degree murder, and was sentenced to life imprisonment. See State v. Coley, 193 N.C. App. 458, 461 (2008). Petitioner subsequently filed a notice of appeal to the North Carolina Court of Appeals. See id. The court of appeals entered an order finding no error on

---

[1] Petitioner has named "State of North Carolina" as respondent in this action. (See Pet. (DE 1) at 1). The custodian of the correctional facility in which petitioner is incarcerated is the proper respondent in an action filed pursuant to 28 U.S.C. § 2254. See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). Respondent represents that Erik A. Hooks ("Hooks"), the Secretary of the North Carolina Department of Public Safety, is the proper respondent in this action. (See Mot. Summ. J. (DE 22) at 1). The court has constructively amended the caption of this order to reflect that Hooks is the respondent in this action, and the Clerk of Court is DIRECTED to change respondent's name in the caption on the docket.

November 4, 2008.[2]  Id. at 468.  On February 5, 2009, the North Carolina Supreme Court  denied petitioner's petition for discretionary review.  State v. Coley, 363 N.C. 132 (2009).  Petitioner subsequently filed an appeal of the court of appeal's decision to the North Carolina Supreme Court pursuant to N.C. Gen. Stat. § 7A-30(2).  State v. Coley, 363 N.C. 622 (2009).  The North Carolina Supreme Court affirmed the court of appeal's decision on October 9, 2009.  Id.

On July 9, 2010, petitioner submitted several pro se filings to the Edgecombe County Superior Court, which the court construed as a motion for appropriate relief ("MAR").  (Resp't's App. (DE 26) Exs. 12-13).  The superior court summarily denied petitioner's MAR on July 21, 2010.  (Id. Ex. 13).  On September 2, 2010, petitioner filed a second pro se MAR, which was summarily denied on October 21, 2010.  (Id. Exs. 14, 15).  On March 14, 2013, petitioner filed a third pro se MAR, which was summarily denied.  (Resp't's App. (DE 27) Exs. 16, 17).

On December 16, 2016, petitioner filed the instant pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and alleged the following:  (1) his medical records were never brought up in court during his three-day trial regarding his health illnesses; (2) he was tried with just one lawyer; (3) he was tried for first-degree murder facing the death penalty without the benefit of a plea offer; (4) his state trial counsel never brought in any witnesses petitioner gave him but let the district attorney bring in two witnesses who lied about petitioner; (5) his state trial counsel did not call any of petitioner's family members or other person's from petitioner's past;  (6) he has written many letters over the years to various persons seeking help to overturn his conviction but all doors have been closed to him; (7) he sent papers in every time he was asked but his letters were sent back to

---

[2] Judge Martha A. Geer dissented by separate opinion.  See Coley, 193 N.C. App. at 469-484.

him stating that a copy of his letters would be put in his files; and (8) he sent paper work a fourth time but he has not received a response.

On June 8, 2017, respondent filed a motion for summary judgment arguing that petitioner is not entitled to habeas relief. Petitioner filed eleven pleadings and other miscellaneous documents in response, including over 400 pages of handwritten documents.

## STATEMENT OF FACTS

The facts as stated by the North Carolina Court of Appeals are summarized as follows:

> On 7 March 2005, Roger Earl Coley ("defendant") called 911 from his house at 410 Myrtle Avenue in Rocky Mount, North Carolina, and reported that he had stabbed his wife, Deborah Thompson Coley, with a butcher knife. When the operator inquired as to how many times he had stabbed his wife, defendant responded that he had stabbed her "about twenty times." Officer Brian Patrick Livecchi of the Rocky Mount Police Department arrived at defendant's house a short time later. At the time Officer Livecchi arrived, defendant was standing on the porch with blood on his clothes. Officer Livecchi then handcuffed defendant and asked him what happened. Defendant responded, "I stabbed her." After handcuffing defendant, Officer Livecchi entered the residence and found Mrs. Coley leaning against a sofa. She was bleeding from her chest. Officer Livecchi took her pulse, and after determining the scene was secure, called the dispatcher to alert the firemen and paramedics.
>
> After other police officers arrived, Officer Livecchi placed defendant in the back of his police car and drove him to the Rocky Mount Police Department. On the way to the police department, defendant made several statements. Defendant stated that "he just simply couldn't take it anymore" and that "she never gave him any respect." At the police station, defendant was informed of his Miranda rights by Detective Thomas Seighman. Defendant responded that he wanted to speak to an attorney. Despite defendant's invocation of his right to silence, defendant continued to make statements. Defendant was then allowed to make several phone calls, which were recorded by a video camera set up inside the police station. During one of these phone calls, defendant described the circumstances surrounding Mrs. Coley's stabbing.

3

> Kevin Bissette, a member of West Edgecombe Rescue Squad, arrived shortly after Officer Livecchi. Mr. Bissette examined Mrs. Coley and determined that she had no pulse. Mrs. Coley was then transported to the hospital as emergency personnel attempted to resuscitate her. These efforts proved unsuccessful, and Mrs. Coley died while being transported to the hospital.
>
> A grand jury indicted defendant for first-degree murder on 23 May 2005. On 26 April 2006, a competency hearing was held before Judge Frank R. Brown in Edgecombe County Superior Court. After hearing the evidence, Judge Brown concluded defendant possessed sufficient capacity to proceed to trial. Defendant was tried before a jury for the murder of his wife, Deborah Coley, on 31 July 2006, in Edgecombe County Superior Court, Judge W. Russell Duke, Jr., presiding. On 2 August 2006, defendant was convicted of first-degree murder and sentenced to a term of life in prison without the possibility of parole.

Coley, 193 N.C. App. at 460-61.

## DISCUSSION

A.   Summary Judgment

   1.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

2. Analysis

a. Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus by a person in custody pursuant to the judgment of a state court must be filed within one year. 28 U.S.C. § 2244(d)(1). The period begins to run from the latest of several dates:

> A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> B) the date on which the impediment to filing an application . . . is removed . . .;
> C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. The one-year statute of limitations is tolled, however, during the time "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

The statutory period began to run in this case on the date petitioner's judgment became final. The North Carolina Supreme Court decided petitioner's appeal on October 9, 2009, finding no error in petitioner's trial and conviction, and issued its judgment dismissing the appeal on October 29, 2009. See Coley, 363 N.C. at 622. Petitioner then had an additional 90 days to file a petition for a writ of certiorari in the United States Supreme Court. See Supreme Court Rule 13; Gonzalez v.

6

Thaler, 565 U.S. 134, 150 (2012). Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court. Accordingly, petitioner's conviction became final for purposes of direct appellate review on January 27, 2010. Petitioner filed the instant habeas petition on December 16, 2016, six years and 325 days after his conviction became final. Thus, the petition is untimely unless the statute was tolled for at least five years and 325 days. See Evans v. Chavis, 546 U.S. 189, 200 (2006).

Pursuant to § 2244(d)(1), the statute of limitations began to run on January 27, 2010 and ran for 163 days until petitioner filed his first MAR on July 9, 2010.[3] Petitioner's submission of the first MAR on July 9, 2010 tolled the running of the statute of limitations, but only during the time period in which the MAR was pending. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (holding time period after case became final for purposes of direct review and the filing of post-conviction motion is not tolled under § 2244(d)(2)). Thus, the 163-day period after petitioner's conviction became final and before he filed his first MAR was not tolled and counts toward the one-year statute of limitations. See Minter, 230 F.3d at 665; Taylor v. Lee,186 F.3d 557, 561 (4th Cir. 1999).

The state court denied petitioner's first MAR on July 21, 2010, and petitioner did not seek review of that order with the North Carolina Court of Appeals.[4] Under normal circumstances, the one-year statute of limitations would begin to run again at the "expiration of the period of time to

---

[3]Respondent used the date petitioner signed his MARs to calculate the statute of limitations, "as a matter of clarity and certainty." (Resp't's Mem. (DE 28) at 6). But the relevant date for tolling purposes is the date of filing. See 28 U.S.C. § 2244(d)(2) (statute of limitations tolled during time "which a properly filed application for State post-conviction [relief] or other collateral review" is pending) (emphasis added); Bryson v. Harkleroad, No. 10-36, 2010 WL 1328313, at *3-4 (W.D.N.C. Apr. 1, 2010) (concluding "mailbox rule" does not apply for purposes of calculating the tolling period under § 2244(d)(2)). As set forth below, however, the petition is untimely even if the court used the date of signing.

[4]With the exception of capital cases, North Carolina prisoners seeking appellate review of orders denying an MAR must file a petition for writ of certiorari with the North Carolina Court of Appeals, and further review by the North Carolina Supreme Court is not available. N.C.R. App. P. 21(e).

seek further appellate review [of the state post-conviction motion]." Taylor, 186 F.3d at 561. That date is impossible to calculate with certainty in this case, however, because the North Carolina Rules of Appellate Procedure do not provide a firm deadline for prisoners to file a petition for writ of certiorari to review orders denying an MAR. See N.C.R. App. P. 21(e) (providing petitions for writ of certiorari to review orders denying an MAR shall be dismissed "in the event the petitioner unreasonably delays in filing the petition").

In Evans, the United States Supreme Court considered the effect a similar California rule on § 2244(d)(2)'s tolling provision. Evans, 546 U.S. at 198-201. The California rule at issue provided that prisoners in California seeking appellate review of an adverse post-conviction ruling must file a new habeas petition with the California Supreme Court within a "reasonable time." Id. at 192-93. The Supreme Court held that "[i]n the absence of . . . clear direction or explanation from the California Supreme Court about the meaning of the term 'reasonable time' in the present context . . . [the district court] must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." Id. at 198. The Court further explained that delays exceeding the time period for filing other types of appeals (such as direct appeals of criminal convictions or appeals in civil cases) should be considered unreasonable in most cases. See id. at 201.

The North Carolina Supreme Court has not defined the phrase "unreasonable delay" for purposes of North Carolina Rule of Appellate Procedure 21(e). McConnell v. Beck, 427 F. Supp. 2d 578, 582 (2006). Thus, under Evans, the court looks to the time periods for filing other appeals in North Carolina to determine when petitioner's right to seek appellate review of the order denying his first MAR expired. Evans, 546 U.S. at 201; Taylor, 186 F.3d at 561 (section 2244(d)(1) statute

8

of limitations tolled from the initial filing of motion for post-conviction relief until the expiration of the period of time to seek further appellate review).

In North Carolina, the time period for filing appeals is thirty days in civil cases and fourteen days in criminal cases. N.C.R. App. P. 3(c) & 4(a). The largest amount of time to seek appellate review is sixty days, which is reserved for post-conviction review of death penalty cases. N.C.R. App. P. 21(f). Because the 60-day period is reserved for death penalty cases, the court predicts the North Carolina Supreme Court would find that a delay of more than 30 days in filing a petition for writ of certiorari to review the order denying petitioner's first MAR would be unreasonable in this case. See Evans, 546 U.S. at 201; McConnell, 427 F. Supp. 2d at 582 (concluding "it is unlikely North Carolina would interpret N.C.R. App. P. 21(e) to extend beyond thirty days, except perhaps for brief, limited periods in very unusual circumstances, which do not arise in this case").

Thus, AEDPA's one-year statute of limitations was tolled from the date petitioner filed his first MAR until his time for filing an appeal expired thirty days after the state court denied the MAR. See Evans, 546 U.S. at 201; Taylor, 186 F.3d at 561.

As noted, petitioner filed his first MAR on July 9, 2010, and it was denied on July 21, 2010. The one-year statute of limitations was tolled from July 9, 2010 until August 20, 2010 (thirty days after July 21, 2010). Thus, petitioner is entitled to forty-three days of tolling in connection with his first MAR proceedings, and the one-year statute of limitations began to run again on August 21, 2010. See Evans, 546 U.S. at 198, 201; Minter, 230 F.3d at 665 (time period when no state post conviction proceeding is pending is not tolled pursuant to § 2244(d)(2)).

Petitioner filed his second MAR on September 2, 2010, and it was denied on October 21, 2010. For the same reasons set forth above, the one-year statute of limitations was also tolled

between September 2, 2010 and November 22, 2010 (the first business day after thirty days from October 21, 2010). Thus, petitioner is also entitled to an additional eighty-two days of tolling, and the one-year statute of limitations began to run again on November 23, 2010.

For the petition to be timely, petitioner needed five years and 325 days of tolling, but he is only entitled to a total of 125 days. Moreover, the § 2244(d)(1) statute of limitations expired on May 31, 2011, because petitioner was not entitled to tolling during each period in which his first two MARs were not pending. See Minter, 230 F.3d at 665. The May 31, 2011, expiration of the statute of limitations is calculated as follows: the period of time between the date petitioner's conviction became final for purposes of direct review and the date petitioner filed the first MAR is 163 days (January 27, 2010 to July 9, 2010), and the period of time between the date petitioner's first MAR became final and the date he filed his second MAR is 14 days (August 20, 2010 to September 2, 2010), which produces a total of 177 days that count towards the running of the statute of limitations. Petitioner's second MAR became final on November 22, 2010. Thus, the statute of limitations expired on May 31, 2011, the first business day after 188 days (365-177=188) from November 22, 2011. The petition was filed on December 16, 2016, and it is untimely by over five years.

Petitioner's March 13, 2013, MAR, and subsequent filings, did not operate to toll the running of the statutory period under § 2244(d)(1) because tolling is not permitted after the expiration of the statutory period. See Minter, 230 F.3d at 665–66; see, e.g., Streater v. Beck, No. 05-284, 2006 WL 1877149, *2 (W.D.N.C. Jul. 6, 2006) ("[I]t is well settled that a . . . motion or petition [filed subsequent to the close of the statutory period] for collateral review in State court cannot somehow

breathe new life into an already expired federal limitations period[.]"), appeal dismissed, 207 F. App'x 271(4th Cir. 2006).

As a defense to the running of the statute of limitations, petitioner contends that he is entitled to equitable tolling. Even though the purpose of the AEDPA is to "reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism," the Fourth Circuit has held that "the AEDPA statute of limitations is subject to equitable tolling." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (en banc). Nonetheless, the Fourth Circuit has noted the rarity in which equitable tolling applies. "Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. . . . Principles of equitable tolling do not extend to garden variety claims of excusable neglect." Id. (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). Rather, equitable tolling only is "appropriate when . . . extraordinary circumstances beyond [the petitioner's] control prevented him from [complying with the statutory time limit]." Id. (citation and quotations omitted).

Petitioner claims he is entitled to equitable tolling because he has been forced to pursue his claims pro se and he does not have any legal training. These contentions do not constitute exceptional circumstances for the purposes of equitable tolling. See Unites States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (stating that ignorance of the law is not a basis for equitable tolling); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999) (finding that unfamiliarity with the law due to illiteracy or pro se status does not toll the limitations period). Thus, petitioner is not entitled to equitable tolling on this ground.

Petitioner also asserts that he is entitled to equitable tolling due to delays in obtaining his trial transcript. The petitioner's inability to obtain the trial transcript does not warrant equitable tolling because petitioner was not prevented from filing the petition by the absence of the transcript.[5] See, e.g., Lloyd v. VanNatta, 296 F.3d 630, 633-34 (7th Cir. 2002) (absence of trial transcript does not prevent filing of habeas petition); Jihad v. Hvass, 267 F.3d 803, 806 (8th Cir. 2001) (same). Indeed, petitioner could have presented sufficient factual support for each of his claims (e.g., the court's failure to consider his medical records, the fact that he did not receive a plea offer, the fact that he only had one attorney, and that counsel was ineffective for failing to call certain witnesses) without the assistance of the transcript. See Lloyd, 296 F.3d at 633.

Petitioner also suggests he is entitled to equitable tolling because North Carolina Prisoner Legal Services ("NCPLS") refused to assist him in filing his habeas petition, and he does not have access to a law library. Plaintiff's allegations regarding NCPLS do not constitute extraordinary circumstances because NCPLS attorneys are not required to take every prisoner action brought by inmates and may use their professional judgment when determining whether to provide representation in a matter. Salters v. Butler, No. 06-3073, 2006 WL 4691237, at *1 (E.D.N.C. Oct. 19, 2006), aff'd, 214 F. App'x 267 (4th Cir. Jan. 24, 2007); see also, Zuniga v. Perry, No. 15-35, 2015 WL 5159299, at *5 (E.D.N.C. Sept. 2, 2015) ("That NCPLS declines to represent some inmates does not deny prisoners meaningful access to the courts.") (citation omitted). Petitioner's remaining contentions concerning the law library likewise do not constitute exceptional

---

[5]The absence of trial transcripts also does not entitle petitioner to a belated commencement statute of limitations under § 2244(d)(1)(B). Section 2244(d)(1)(B) provides that the statute of limitations may commence on the date on which an impediment to filing a petition created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action. As set forth above, petitioner has made no showing that he was prevented from filing because he did not have access to the transcript. See also Clark v. Oklahoma, 468 F.3d 711, 714 (10th Cir. 2006).

12

circumstances for the purposes of equitable tolling. See Sosa, 364 F.3d at 512 (stating that ignorance of the law is not a basis for equitable tolling); see also, Garvin v. Eagleton, No. 12–1165, 2013 WL 3821482, at *13 (D.S.C. July 23, 2013) ("Petitioner's allegations regarding lack of resources in the law library do not constitute the type of extraordinary circumstances that justify equitable tolling because alleged inadequacies of prison law libraries do not toll the statute of limitations."), appeal dismissed, 544 F. App'x 236 (4th Cir. 2013); Jenkins v. Johnson, No. 09-32, 2009 WL 1923938, at *4 (E.D. Va. June 29, 2009) ("[D]elays due to seeking legal advice and related allegations of inadequate prison law libraries have consistently been held not to constitute the 'extraordinary circumstances' to warrant the application of equitable tolling.") (citation omitted). Thus, petitioner is not entitled to equitable tolling on these grounds.

Finally, petitioner asserts that he is entitled to equitable tolling because he has mental health issues. In order to establish equitable tolling due to mental impairment, a petitioner must make a threshold showing of incompetence and also demonstrate that such incompetence affected his ability to file a timely habeas petition. See Lawrence v. Florida, 549 U.S. 327, 337 (2007); McSwain v. Davis, 287 F. App'x 450, 456 (6th Cir. 2008). Petitioner is not entitled to equitable tolling on this basis because the North Carolina courts evaluated petitioner and affirmatively found that he was competent to stand trial, and petitioner has not otherwise presented any evidence suggesting that he suffers from "profound mental incapacity." See Sosa, 364 F.3d at 512-13; see also Farabee v. Johnson, 129 F. App'x 799, 802-04 (4th Cir. 2005). Moreover, the fact that petitioner has filed and prosecuted at least three state MARs, and multiple civil rights lawsuits since his incarceration suggests that he is not "profoundly" incapacitated by his mental health issues. See Sosa, 364 F.3d at 512-13.

Based upon the foregoing, the petition is time barred, and petitioner is not entitled to equitable tolling. Thus, respondent's motion for summary judgment is GRANTED.

### b. Petitioner's Responses

As noted, petitioner filed over 400 pages of handwritten, single-spaced documents in response to the motion for summary judgment. The filings appear to be petitioner's handwritten transcription of the state trial court transcript, interspersed with petitioner's commentary about how the proceedings were unfair. With the exception of petitioner's first response, the court declines to review these filings.[6] It is not the court's responsibility to comb through the state record to identify factual support for petitioner's claims, or to identify other meritorious claims. See Adams v. Armontrout, 897 F.2d 332, 333 (8th Cir. 1990) ("We do not believe that 28 U.S.C. § 2254 or the Section 2254 Rules require the federal courts to review the entire state court record of habeas corpus petitioners to ascertain whether facts exist which support relief. . . . We join the numerous federal courts which have repeatedly expressed their unwillingness to sift through voluminous documents filed by habeas corpus petitioners in order to divine the grounds or facts which allegedly warrant relief."). To the extent petitioner's responsive filings present new claims that were not presented in the original petition, they are DISMISSED without prejudice. See Miles v. Owen, No. 12–998, 2013 WL 227766, at *2 (D.S.C. Jan. 22, 2013) (habeas claims presented for the first time in response to summary judgment motion are not properly before the court).

---

[6]In addition, with the exception of the first response, each of these filings were untimely because they were filed after July 3, 2017, without leave of court. (See Letter from Peter A. Moore, Clerk of Court, to Roger Earl Coley (June 9, 2017) (DE 29) (notifying petitioner, pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that his deadline for responding to the motion for summary judgment was July 3, 2017, under Local Civ. R. 7.1(e)(1))).

B.     Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, "the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.' " Buck v. Davis, 137 S. Ct. 759, 773-74 (2017) (quoting Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003)); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." Slack, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is DENIED.

## CONCLUSION

For the foregoing reasons, the court ORDERS as follows:

1) Respondent's motion for summary judgment (DE 22) is GRANTED. To the extent petitioner has asserted new claims in response to respondent's motion for summary judgment, such claims are DISMISSED without prejudice;

2) A certificate of appealability is DENIED;

3) The court has constructively amended the caption of this order to reflect that Hooks is the respondent in this action, and the clerk is DIRECTED to change respondent's name in the caption on the docket.

4) The clerk is DIRECTED to close this case.

SO ORDERED, this the 29th day of March, 2018.

LOUISE W. FLANAGAN
United States District Judge